Appellate No. 17-1825 Good morning, Judge Schwartz. May it please the court. My name is Josh Bolian for the petitioner, Jiefei Liao. I would like to reserve five minutes for rebuttal. Be granted. The Pennsylvania statute at issue in this case covers every kind of risk that a child might face. It is therefore not a crime of child abuse because the definition of that covers only some, but not all, kinds of risks that a child might face. Can you articulate what you understand the risk to be under the INA? The definition of child abuse enunciated in the board's matter of sorum precedent is that on a case-by-case basis, the board will determine whether the risk required by the state statute is high enough to constitute child abuse. And why is the Pennsylvania statute, in your opinion, not sufficient? Because the board's definition of child abuse implies that there is some risk that constitutes risk, but it's too low to constitute child abuse. Therefore, a statute like the Pennsylvania statute that covers the entire spectrum of risks from low to high is by definition not a crime of child abuse. Can you be a little more specific? Are you talking about the fact that the Pennsylvania case law speaks of conduct that, quote, could threaten as opposed to likely threaten? I believe more accurately we'd focus on the language of the Pennsylvania statute, which says in danger. Pennsylvania case law defines in danger to mean does threaten. So it's not a could threaten. It says what? I didn't quite. I'm sorry, Judge Fisher. The statute requires that the child, in fact, be in danger, which means that the child is at some level of risk. Are you sure? Some of the case laws, and so do the jury instructions, speak of conduct that could threaten. That's true, Judge Schwartz. The elements of the statute are repeated in a number of cases, including by the Pennsylvania Supreme Court. Use this could threaten language. Aren't we supposed to be looking at the elements as under the categorical approach? Yes, Your Honor. The could threaten language is actually more favorable to me than the endangers language that I was pointing the court to earlier. So absolutely, under the could threaten language that the courts use as the elements, the Pennsylvania statute does not qualify. But even if one looks at the plain language of the statute, which requires that the child is endangered and therefore is threatened, even that does not constitute a crime of child abuse. Address, if you would, the government's argument on that point. I know you saved some rebuttal, but the government argues that this statute categorically covers child abuse. And I have a little trouble with the government's argument at times, but would you address their Connor version? So I believe the government has two principal merits arguments. I'll start with the latter because it's more easily exposed. That's what I'm interested in. And you can tell me if I'm not going where you're interested. There the government's response brief says at some length that what's what matters is the facts of actual cases that Pennsylvania courts have decided. Under the Supreme Court's Duenas Alvarez case. However, the government's August 15th letter to this court concedes the position that I'm taking, which is that one reaches the facts of such cases only if the Pennsylvania statute by its plain terms fits within the federal definition of child abuse. So that leaves the government's first merits argument, which is that the Pennsylvania statute requires that harm to a child be practically certain. Is that what you're asking about? Why isn't that a good argument? If it were the case that the Pennsylvania statute required that, then that would be a very good argument. However, that is not the case. The government derives that argument from the Pennsylvania Superior Court's decision in Commonwealth v. Wallace. But what the Wallace court held was not that practical certainty is required. The court there looked at the text of the statute, which says knowingly endangers this practical certainty standard. The government seeks is hidden in that word knowingly. Pennsylvania law in this context defines knowingly to mean that the defendant was aware that her conduct was practically certain to cause a specified result. But that only raises a second question. What is the result specified in Section 4304? It's not that the child be harmed. The statute does not require harm to a child. Rather, the only result specified in the Pennsylvania statute is endangerment. Thus, to put it all together, what the Wallace court held and what Section 4304 requires is that the defendant was aware that her conduct was practically certain to cause endangerment, not harm. So from your point of view, the practically certain language really speaks to the state of mind and the awareness, but not the result. That's right, Judge Schwartz. And thus, under both the mens rea prong and the actus reus prong, the statute requires nothing more than endangerment, which the Wallace decision itself held means to put at risk or in danger, not to make harm more likely than not, not to put it substantial risk, which is a phrase the legislature used elsewhere in the statute, but merely to put at risk, which is what the board has twice held is not enough to constitute child abuse. How do you respond to the exhaustion argument? And I want to ask about a particular just one particular point on that. In a footnote in the BIA's opinion, the BIA says that the petitioner failed to contend the degree of endangerment required by his statute of conviction is insufficient. That's correct. What did you understand that to be referred referring to? And why isn't that an indicator that he didn't raise the very issue you're raising with us? That footnote asserts that Mr. Leal did not raise the argument that he's raising to this court today. However, I believe that that's simply incorrect. The board's construction of the argument advanced by counsel and by Mr. Leal, per se, is respectfully not something that makes a lot of sense. So did you understand this? Is it your position that this footnote is just wrong when you consider the content of his counseled brief? That's certainly true of the counseled brief, but one needn't even look at that brief. Both briefs properly construed under this court's liberal exhaustion policy make the argument that's made here. And indeed, the board's statement that Mr. Leal did not raise the argument should have no bearing on this court's jurisdictional inquiries. Judge Fisher actually authored an opinion a decade ago in a case called Hussain v. Attorney General, where the board did what it had done here, and stated incorrectly that the petitioner had failed to raise an argument. But that was not the case. A decade ago? Does it still count? Was it a decade ago? That seems like a long time ago. If you wrote it, it counts. I can barely remember 2008 myself sometimes, in any event. But yesterday. Just for the record, because that case wasn't cited in the briefs, that's a 260 Fed Appendix 447. To return to the exhaustion point, unless the court has other specific questions. I wanted to ask you just about your description of the August 15th letter of the government. Sure. Is it your position, then, that the government is taking this position, and I'll ask them to confirm, that the realistic probability analysis does not apply in a circumstance where the elements of the statute of conviction, and in this case the INA child abuse definition, do not match. If you come to a circumstance where the elements don't match, you do not go to reasonable probability. I believe that the court is correct. Let me rephrase it and make sure that there's no distinction between my understanding and the court's. I believe the government's position, which is the position I'm advancing, and that this court stated in the Jean-Louis case, among others, is that if the elements of the state statute are clear, and those clear elements exceed the federal definition, in this case of child abuse, then there is no need to conduct a realistic probability inquiry. When you use the word exceed, do you mean the elements don't match? Yes, Your Honor. So to return to the exhaustion point generally, the standard that this court has enunciated is that if the petitioner has put the board on notice of a claim of error hovering around the issue, then this court has jurisdiction over that issue. That's from this court's Yan-Lan Wu decision, 393 F3rd at 422. Mr. Leal satisfied that standard here, because in both briefs it was argued that the Pennsylvania statute is distinguishable from the Colorado statute in the board's matter of sorum decision. I see my time is up. Thank you, Your Honor. Thank you. May it please the Court. My name is Jonathan Robbins. I'm here on behalf of the Attorney General. Good morning to everyone. As my colleague alluded to, there are two primary issues in this case. The first deals with whether Petitioner exhausted his administrative remedies with respect to the arguments regarding degree of risk, and the second argument is, of course, to the merits and whether the Pennsylvania endangerment statute in this case is a categorical match to the board's federal definition of child abuse, child neglect, and child abandonment as defined within the Immigration and Nationality Act. With respect to the exhaustion argument, I certainly take Petitioner's point regarding the liberal construction for pro se aliens, but there's a big problem here about exhaustion, because the board has a series of cases, Velazquez-Carrera, Saram, and Mendoza-Osorio, in which it said that what we're looking to is the degree of risk. That's how we determine whether a state statute falls within the ambit of the federal definition. But the board hasn't specifically set a bright line as to what level of risk is acceptable, and they do that on purpose because different states have different ways that they describe the degree of risk. They use terms like substantial, genuine, likely, reasonable, et cetera. So the board hasn't drawn a line. So the board in each has said it looks on a state-by-state basis to determine what level of risk is going to fall within the definition. But didn't the petitioner's reference to Sorum and its comparison of the Colorado statute in his statements, it's not like Pennsylvania is sufficient to say, I want you to make that determination here? The board obviously didn't think so. And actually, interestingly, the board, in a footnote, put in a footnote, I think maybe the board was worried that its interpretation might not be accepted by the court, because it said, look, we don't think that petitioners argued anything regarding degree of risk here. That's something the board is really supposed to look at in the first instance on a case-by-case basis because they're the ones that are tasked with the function of determining whether the level of risk is sufficient to meet the definition. What if we could conclude the board was mistaken, as your adversary encouraged us to do? They were mistaken in their interpretation of the brief. Should we then remand it? Or can we decide the issue? Because one could argue its opinion in and of itself did decide the issue. It found the Pennsylvania statute qualified a covered offense under the INA or an equal offense to the INA's definition of child abuse. So it reached the issue, didn't it? I don't think it did, Your Honor. The board didn't reach the issue as to whether this is sufficient. How could it? If it didn't, then what's its ruling mean? Because its ruling says the Pennsylvania statute qualifies. If the Pennsylvania statute qualifies, by implication it means it meets the level of risk necessary to equate to the child abuse INA definition, right? Well, if you're asking me whether you think it's implicit in the board's decision whether they looked at the risk here, the practical certainty, and said that that was there, it is implicit. But the problem here is there's an argument being made that the level of risk isn't practical certainty. So if the court were to disagree and say that some lower level of risk were included in the statute, the board wouldn't have had an opportunity in the first instance to determine whether that lower level of risk would categorically meet the federal definition under its definition matter of SOROM and matter of Mendoza-Osorio. Then how could it have concluded it was if it did make a determination the statute met the risk requirement? It is self-imposed, and to which we give Chevron deference. Well, I think it just looked at the case. This case is a very similar statute to the statute in Mendoza-Osorio. And the way that I read the board to read it, the way the board wrote its decision, it was essentially addressing Petitioner's argument that this wasn't distinguishable from those statutes in any meaningful way. But if you think the Pennsylvania statute is similar to the California statute that was looked at in Mendoza, is that what you just said? No, Mendoza was a New York statute. The California statute was – It was for Gozo. Yeah, for Gozo. It was for Gozo. Okay. The government agrees it is not a categorical match. That statute was a misdemeanor felony provision in which all they had to show was that the child may be in danger. So that did cover a bare – I'm sorry. But Mendoza-Osorio embraced the analysis of Gozo, right? It adopted – it cited to the Ninth Circuit and said, we agree. And the Ninth Circuit looked at a statute that I think you just said looks a lot like the Pennsylvania statute. And so our sister circuit has already found that particular statute is insufficient to fall within the child abuse definition. Respectfully, Your Honor, I disagree. I think for Gozo it is distinguishable. I think the statute in this case is more akin to the New York statute. I think you're parsing too fine. Well, no, I don't agree because if you remember from Mendoza-Osorio, the – Well, because we are dealing with the overall subject matter of what is required of a state statute to determine whether it meets the immigration definition of child abuse. And once you step into that subject matter, I think you better be prepared to understand with the Pennsylvania statute you're dealing with how that might compare to any other description of child abuse. Once you start talking on the subject matter, it's like privilege. You say a few words and you open the whole thing up. No, no, I agree. My only point is that this statute, the government is arguing that this statute is more akin to the statute that was actually considered in Mendoza-Osorio, the New York child endangerment statute, which also had the element of knowingly endangering a child. And this is distinguishable from the Gozo. I thought we were still talking about exhaustion. Oh, I thought we had shifted gears. Even so, I mean, the point is well taken. Don't you agree? I agree. The point is well taken, certainly. But, again, the government stands by the exhaustion argument. The statute requires exhaustion. The board hasn't had, we think, a first instance to look at this situation. Okay. And that is what induced me to say I think you're parsing too fine. Fair enough, Your Honor. Well, even if the court disagrees with the exhaustion argument, even on the merits, we think that this Pennsylvania child endangerment statute is a categorical match to the board's federal definition of child abuse, child neglect, and child abandonment. Now, the statute itself, everyone agrees here that we're applying the categorical approach. And the Supreme Court has put an important qualification on the categorical approach. It said that when we're comparing the Pennsylvania statute to the federal definition, we don't just invoke the statute's breadth and broad terms. There has to be a realistic probability that the state statute would punish the minimum conduct in question. I thought your adversary described your letter of August 15th as conceding that you don't apply the realistic probability approach where the elements do not match. Did he misunderstand your letter? No. My understanding of that letter is that there are certain circumstances where the statute, on its face, has elements that would show minimum conduct. So, for example, there's an 11th Circuit case that dealt with a Georgia shoplifting statute, and that under that statute, on the face of the statute, you could be convicted of an intent to deprive or an intent to appropriate. So the intent to deprive would be a categorical theft offense. The intent to appropriate wouldn't. When there's a statute like that, that on its face has two separate elements, that is not a statute that invites any legal imagination, right? You can tell from the face of the statute that it covers minimum conduct that would fall outside the generic definition. That is, I think most courts have agreed, is a situation where you don't apply the realistic probability test. Now, you compare that to this statute here. This is a statute that invites legal imagination. Your honors need to look no further than Petitioner's opening brief to see the hypotheticals that have been posed, hypothetical after hypothetical, with respect to this particular statute. So your position on the realistic probability is that only if the face of the statute parsed without any consideration to the elements as articulated by courts. No, no. You definitely have to look at the elements by courts. We do that in our brief, and we point to the different Pennsylvania courts and to how they've interpreted this statute. I mean, I guess we could start with the text of the statute itself. The statute requires that the relevant person knowingly endanger the welfare of a child by violating a duty of care, protection, or support. Now, that term knowingly is defined in the statute under Section 302b2. And among the different things that have to be shown for the knowing element, it says if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result. That's exactly what the board has said that we're supposed to look to in matters of the court. He's certain about that he knows what he's doing is going to cause something. The question here is, is that thing a threat to a child, substantial threat to a child, risk of harm to the child? So I think where the disconnect might be is that practical certainty component seems to speak of was the actor aware of the consequences of his action as compared to the result of that action, which is the risk. And isn't that where the Pennsylvania statute falls outside of the definition of child abuse? I don't think so. The state court in Commonwealth against Wallace spoke to this practical certainty standard, and it said it is the awareness by the accused that his violation of his duty of care, protection, and support is practically certain to result in the endangerment to his children's welfare, which is prescribed by statute. And what is the endangerment? How do you define endangerment? Because isn't that what this is about is the risk of harm, the substantial risk of harm? The substantial practical impact of your conduct are two different things. Knowing about the results of your actions and what they pose are not necessarily the same. I think the answer lies in the different cases regarding this in the Pennsylvania case law. They've talked about the endangerment statute here. This endangerment statute is really intended to cover a wide swath of conduct because it's just not really plausible to enumerate every type of act that would endanger a child. So it's drawn up in such a way that it encompasses a large amount of activity. So what level of risk is required? But that is reined in in the case law by what the courts have deemed a common sense of community. So, in other words, that's why a petitioner isn't able to point to any situations where somebody has been convicted of driving 12 miles over the speed limit or rolling through a stop sign. It's because the Pennsylvania courts have limited this sort of broad sweeping statute. What level of risk is required under Pennsylvania law? That seems to be the focus of the BIA's opinion. So what level of risk is required? It is. I think it's practical certainty because I don't think the practical certainty here can be divorced from the level of endangerment. The board has said that we're looking at the risk of harm. Again, there's no cases above the bare minimum risk of harm that petitioner can point to that would render this statute punishing conduct that falls outside the federal definition. So there's a case called Kopech, which is a Commonwealth case. They give an example. The case has to do with whether a child endangerment and assault or mergible offenses, something along those lines. But they use an example in there about what will constitute child endangerment. And they said essentially smoking crack in the presence or with a 10-year-old may be child endangerment. Let's assume the hypothetical is smoking crack in the presence of the child. Does that pose a risk of harm to the child? The child's not smoking. It's just in the house where it's happening. That might be child endangerment. But where's the risk of harm there to the child? Well, there's no under the board's definition of child abuse, child neglect, and child abandonment. I think that might pose a sufficiently high level of risk of harm because it's not just actual injury to the child that is included. It's also psychological harm as well. What if the child is in the bedroom and the parents are in the basement and that's happening? Same conduct. Is there a risk? The child doesn't know what the parents are doing. I'm sorry. I'm not familiar with this case. This is a case where they produced a conviction on child endangerment. They were discussing. The context was like a merger case. They were discussing whether the simple assault was akin to a child endangerment. But they had this line in there to make clear that that might be child endangerment, the hypothetical that we're sharing with you. But it wouldn't be like simple assault. Okay. We all agree that's not simple assault. But my question is how could that be the kind, fit the definition of child abuse as the INA has defined it, where there's no risk of harm to the child at all?  When you're dealing with a close line like that, it's really the board's opportunity in the first instance to determine whether that level of risk would be sufficient to encompass it within the federal definition. But, again, it sounds like Your Honor is saying that that was a hypothetical in that case. And the Supreme Court has said that we don't engage in hypotheticals. We have to look to the actual conduct that's been punished under the statute. So if nobody's been punished for smoking crack in a situation where the child is maybe in a different room, I don't think we can use that to show minimum conduct punished by the state statute under Supreme Court law, which is the law of the land. The Ninth Circuit case that was embraced in Mendoza-Osorio. Fugoso. Fugoso. Had language that was very similar the way it was construed. Something along the lines of may endanger. It had sort of this may clause before endanger risk or something like that. The Pennsylvania courts discuss this statute as could harm. Aren't they the same? And if that's the case, then you're asking us to deviate from at least the prism that Mendoza-Osorio embraced. I don't think that the Pennsylvania statute is limited to just could harm. If you look at the definition in the statute under 302b2 where it talks about the knowing element. You're back to knowledge. I'm back to risk to the child. I'm not speaking about what the actor knew. I want to know about the risk to the potential victim. You're talking about two different things. Again, the Pennsylvania state courts have limited the harm to, I think they've termed it the common sense of the community. They say, let me see if I can find the exact quote here. The common sense of the community as well as the sense of decency, propriety, and morality, which most people entertain is sufficient to apply the statute to each particular case and to individuate what particular conduct is rendered criminal by it. Again, remember, the Pennsylvania courts have had this problem. Because they can't enumerate the different types. Doesn't that automatically show that the statute can encompass conduct, which is less than the conduct that fits into the immigration, the BIA definition of child endangerment? Without that limiting concept of the common sense of the community, yes, that might be overbroad. The concept of common sense of the community, that can vary from the community to the community, right? It can. I think basically that argument shoots you in the foot. I don't agree, Your Honor, because, again, this is a state-by-state case. Yes, the common sense of Pennsylvania might be different than the common sense of California. But that's why the board engages in a state-by-state analysis to look at whether the minimum conduct that is actually punished by the statute falls within the federal definition. Oh, I see I'm out of time. Finish your answer. Go ahead. Okay. So in this case, because there are no Pennsylvania statutes that cover the bare minimum of conduct that is akin to the main endangered standard from Fregoso, and under the realistic probability test, we can see that the common sense of the community in Pennsylvania is such that nobody gets convicted for driving 12 miles over the speed limit or for rolling through a stop sign or for any of the bare minimum conduct that are posed in the hypotheticals and petitioner's opening brief. Unless there are further questions by the court, I would respectfully ask that the petition for review be dismissed or alternatively denied. Thank you very much for your time, Your Honor. Thank you. Thank you. Unless the court would like to start with specific questions, I have three points to make. I just have one question. What level of risk do you think Pennsylvania requires? There is no level of risk. It requires endangerment, which, as the Commonwealth v. Wallace decision states, covers any kind of risk. Okay. Thank you. My first point is that the government made the argument that the board determines on a state-by-state basis what level of risk of harm is enough. That is correct. And therefore, if the Pennsylvania statute required something beyond mere risk, for example, if it said that risk was likely, then the appropriate disposition would be for this court to exercise jurisdiction and remand to the board for it to make that state-by-state determination. However, because the Pennsylvania statute encompasses every kind of risk, there is no minimum threshold at all. There is no judgment for the board to make on a state-by-state basis, and therefore remand is unnecessary. My second point is that the government argues that we look at the facts of individual state cases if the statute on its face differs from the federal definition. And it's my position that the statute here does differ on its face from the federal definition. The statute on its face says endangers. And as I was saying to Judge Schwartz a moment ago, endangers covers every kind of risk, which makes it broader than the federal definition, rendering it unnecessary for the court to consider the facts of actual decided cases and to conduct a realistic probability inquiry. My third point concerns the government's closing remarks about the Pennsylvania Supreme Court's standards regarding the common sense of the community. It is true that the Pennsylvania Supreme Court has held that words like endangerment are to be given meaning by reference to the common sense of the community. However, what the court is doing in that case is merely defining what risk means. It is not setting a lower threshold on what risk is required. And if you think about it, any endangerment statute has to have that common sense definition as opposed to, say, a more philosophical definition of risk, under which, say, we're all at risk right now because there's some chance that the ceiling could collapse, because otherwise every endangerment statute would render every parent a criminal every day. The board has held that that's not enough. Even if you define risk in a common sense way, as the Pennsylvania Supreme Court has instructed us to do, you need something more than that, like substantial risk, which the Pennsylvania legislature used elsewhere in this statute. Unless the court has any further questions. Your first point, though, you said that we don't need to remand because there's no minimum risk and therefore no state-by-state analysis is necessary. Isn't that exactly what you have to do? Like, look at the statute. Does it have the sufficient level of risk articulated to make it covered by the child abuse definition? Don't we have to? Isn't that what you are doing in this state-by-state analysis? You're looking at the statute presented and comparing it to the INA definition? Unless I misunderstood your point. Yes, Judge Schwartz. That is what I'm saying we have to do. I think the government's argument is that it is a decision for the board to make in the first instance whether a particular threshold of risk is high enough. Didn't they make that decision when they said the statute qualified? I absolutely agree with that and thus think that there is no need conceivably to remand. However, were the court to disagree and to believe that because the board did not explicitly conduct an analysis of the level of risk required, the court might be inclined to let the board address that in the first instance. And that might be warranted if there were anything here for the board to address. However, here there is not. This court has held in a number of cases, including the Jean-Louis case cited by both sides here, that where the outcome of the case, once the state statute is properly construed, is clear under the board's own precedence, then the purpose of a remand is not served and one is not necessary. Thank you, Your Honors. Okay, thank you. Thanks to both counsels for a well-argued case and briefing and thanks to counsel for petitioner for accepting the court's appointment on this matter.